**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHAEL SEAWRIGHT,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 1:02-1815** |
| v. | : | **(CONNER, D.J.)** |
| | | **(MANNION, M.J.)** |
| **ANNA MARIE FABO, Nurse;** | : | |
| **JOHN CAIN, Physician's Assistant; DAWN MILLS,** | : | |
| **Physician's Assistant;** | | |
| **DR. JONES; DR. BERGER;** | : | |
| **and DR. ROEMER,** | | |
| | : | |
| **Defendants** | | |
| | : | |

## REPORT AND RECOMMENDATION

By order dated September 21, 2005, the instant action was remanded to the undersigned for a determination as to whether summary judgment in favor of the defendants, on the plaintiff's medical malpractice claim, would be appropriate in light of this court's previous denial of the plaintiff's requests for appointment of counsel. (Doc. No. 169). Of concern to the court are three (3) decisions of the Third Circuit: (1) Tabron v. Grace, 6 F.3d 147 (3d Cir. 1993); (2) Parham v. Johnson, 126 F.3d 454 (3d Cir. 1997); and (3) Montgomery v. Pinchak, 294 F.3d 492 (3d Cir. 2002). Upon review of the relevant case law, as well as the particular facts of the instant case, the undersigned believes that a recommendation that summary judgment be granted on the plaintiff's medical malpractice claim for his failure to present expert testimony in support of his claim, is appropriate.

In making the above recommendation, the court is cognizant of the dilemma faced by an indigent claimant such as the plaintiff. However, the resources of the court are in stark contrast to the pool of litigants who daily request the appointment of counsel in *pro se* cases. Further, a review of pertinent case law confirms that while the plaintiff is desirous of counsel, he is not entitled to it.

In Tabron v. Grace, supra, an indigent prisoner brought a civil rights action pursuant to 42 U.S.C. § 1983, after having been beaten in prison. On appeal, although the plaintiff did not raise an issue concerning the denial of counsel in the district court, the Third Circuit held that it was in its discretion to consider the issue *sua sponte*. In doing so, the Third Circuit set forth its view of the specific standards to be applied in considering motions for appointment of counsel in a civil case under 28 U.S.C. § 1915(d)[1]. The court found that, although civil litigants have no statutory right to appointed counsel, See Mallard v. United States District Court, 490 U.S. 296 (1989), § 1915(d) gives the district courts broad discretion to request an attorney to represent an indigent civil litigant. In considering the matter, the court rejected the "exceptional circumstances" standard adopted by other courts. See e.g.,

---

[1]Section 1915(d) provides:
>  The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious.

Lavado v. Keohane, 992 F.2d 601 (6th Cir. 1993); Fowler v. Jones, 899 F.2d 1088 (11th Cir. 1990); Cookish v. Cunningham, 787 F.2d 1 (1st Cir. 1986); Aldabe v. Aldabe, 616 F.2d 1089 (9th Cir. 1980); Cook v. Bounds, 518 F.2d 779 (4th cir. 1975).  Citing to its prior decision in Smith-Bey v. Petsock, 741 F.2d 22, 26 (3d Cir. 1984), the only other case in which the Third Circuit addressed the circumstances under which counsel is appointed under § 1915(d), the court noted:

> [T]he appointment of counsel for an indigent plaintiff in a civil case under 28 U.S.C. § 1915(d) is discretionary with the court and is usually only granted upon a showing of special circumstances indicating the likelihood of substantial prejudice to him resulting, for example, from his probable inability without such assistance to present the facts and legal issues to the court in a complex but meritorious case.

In Tabron, the court elaborated upon Smith-Bey by delineating further criteria for ascertaining the "special circumstances" under which counsel may be appointed for an indigent litigant in a civil case. To this extent, the court found that the district court must, as a threshold matter, consider the merits of the plaintiff's claim.  If the district court determines that the plaintiff's claim has arguable merit in law and fact, it should then consider the plaintiff's ability to present his case, which may include factors such as the plaintiff's education, literacy, prior work experience, and prior litigation experience; his ability to understand English; or the restraints placed upon him by confinement.  If the plaintiff appears incapable of presenting his case, and if

3

the plaintiff's claim is truly substantial, the Tabron court suggested that counsel should ordinarily be appointed. The Tabron court further suggested that, in conjunction with the consideration of the plaintiff's ability to present his case, other "key" factors to consider are the difficulty of the particular legal issues and the degree to which factual investigation will be required and the ability of the indigent plaintiff to pursue such investigation. More generally, the Tabron court suggested that the court may also consider the extent to which prisoners and others suffering confinement may face problems in pursuing their claims; whether the claims are likely to require extensive discovery and compliance with complex discovery rules; whether a case is likely to turn on credibility determinations and, along the same line, whether the case will require testimony from expert witnesses.

The Tabron court noted that the above list of factors to be considered is not exhaustive. Additionally, the court recognized and emphasized that the appointment of counsel is a matter of broad discretion, the determination of which should be made on a case-by-case basis. However, the decision to deny counsel is reviewable for abuse of discretion and any decision to deny counsel should be supported by a statement of reasons for doing so.

After addressing the above factors, the Tabron court took note of the significant practical restraints on the courts' ability to appoint counsel, including the ever-growing number of prisoner civil rights actions, the lack of funding to pay appointed counsel, and the limited supply of competent

attorneys willing to undertake such representation without compensation. The court further recognized that there are many cases in which the district courts seek to appoint counsel, but there is simply no attorney willing to accept appointment. On this basis, the court noted that it is difficult to fault a court that denies a request for appointment of counsel. The <u>Tabron</u> court further cautioned that courts should not request counsel under §1915(d) indiscriminately, finding that volunteer lawyer time is extremely valuable.

Several years after <u>Tabron</u>, the Third Circuit issued its decision in <u>Parham v. Johnson</u>, 126 F.3d 454 (3d Cir. 1997). In <u>Parham</u>, a prisoner filed a civil rights action against a prison physician alleging an Eighth Amendment medical claim. Although the magistrate judge in that action found that the plaintiff's claim may have merit and ordered the clerk to appoint counsel pursuant to §1915(d), counsel was never appointed. Two years later, the plaintiff renewed his motion for appointment of counsel. In considering the motion, the district judge indicated that the plaintiff's claim had merit, but denied his request for counsel specifically reasoning that, since no expert witnesses would be needed, the plaintiff was competent to try the case without the assistance of counsel. The court ultimately directed a verdict in favor of the defendant finding that no reasonable juror could find that the defendant was deliberately indifferent to the plaintiff's medical needs and, more importantly for purposes of the Third Circuit's decision, because the plaintiff had failed to present an expert witness to prove a causal connection

5

between the plaintiff's pain and suffering and the defendant's actions.

On appeal, the Third Circuit reversed and remanded, finding that the district court had abused its discretion in not appointing counsel for the plaintiff. Finding that the plaintiff had presented a meritorious case, the court conducted a review of the Tabron factors, most of which the court found favored the appointment of counsel. The court noted that when a case has merit and most of the Tabron factors weigh in favor of appointing counsel, the district courts should make every attempt to obtain counsel for an indigent litigant.

Finally, in Montgomery v. Pinchak, 294 F.3d 492 (3d Cir. 2002), an inmate filed a civil rights action against the defendants alleging that they were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Specifically, the plaintiff alleged that the defendants denied him necessary treatment and prescriptions for a heart condition and human immunodeficiency virus (HIV). The plaintiff filed a motion for appointment of counsel, which the court denied. Ultimately, the court granted the defendants summary judgment.

On appeal, the Third Circuit held that the district court abused its discretion by refusing to appoint counsel, which prejudiced the plaintiff's ability to meet the evidentiary requirements of the summary judgment motion. The court further found that the plaintiff's action had merit as he had a serious medical need and alleged that the defendants refused to provide him

6

necessary treatment. In considering the Tabron factors, the court determined that all but one of the factors were met. To this extent, the court found that the plaintiff's ability to present his own case was doubtful as he had difficulty with the discovery rules; the case was complex; investigation and depositions were needed, along with expert testimony regarding the plaintiff's medical condition; and he could not obtain counsel himself. Given this, the court remanded the action with instructions to appoint counsel for the plaintiff.

With the above in mind, the court turns to the instant action. By way of relevant background, on October 9, 2002, the plaintiff, an inmate at the State Correctional Institution, Huntingdon, ("SCI-Huntingdon"), Pennsylvania, filed this civil rights action pursuant to 42 U.S.C. § 1983, in which he alleged a First Amendment retaliation claim and an Eighth Amendment deliberate indifference to medical care claim. In addition, the plaintiff alleged a state law claim of medical malpractice. These claims were in relation to allegedly inadequate treatment which the plaintiff received for an injury to his Achilles tendon. (Doc. No. 1).

On December 19, 2002, the plaintiff filed a motion for appointment of counsel, in which he set forth several supporting arguments. Among those arguments was the presence of medical issues requiring expert testimony. (Doc. Nos. 14 & 15).

By memorandum and order dated December 27, 2002, this court denied the plaintiff's request for counsel. In doing so, after setting forth the Tabron

factors, the court indicated the following as the basis of its denial:

> The plaintiff's complaint indicates that he has the ability to "present the facts and legal issues to the court" without the assistance of an attorney. A review of the record of this case suggests that plaintiff can, given the leeway afforded to pro se litigants, adequately present his case and follow the applicable rules. The plaintiff is literate and is able to communicate his thoughts to the court. His filings thus far have been understood, and they indicate that plaintiff is capable of pursuing his complaint without the benefit of appointed counsel. The issues raised by plaintiff do not appear to be complex.
> Thus, for the foregoing reasons, the plaintiff's request for court-appointed counsel will be denied.

(Doc. No. 17).

It is important to note that the plaintiff and his family attempted, over a period of time, to retain private counsel. Apparently, however, none of the attorneys they engaged to review his case were willing to undertake representation. In the court's experience, viable medical malpractice actions are virtually always prosecuted on a contingency fee basis. This type of fee relieves the plaintiff of the obligation to expend money up front in return for turning over a percentage of the recovery to his counsel. The fact that this case is now three (3) years old and no lawyer has been willing to undertake plaintiff's representation may be some indication of the merits of his claim.

For example, on April 2, 2003, after the filing of dispositive motions, the plaintiff requested a stay of the proceedings in this action. In support of his request, the plaintiff indicated that he was attempting to obtain private counsel

to assist him in proceeding with his claims. (Doc. Nos. 37 & 38). The court entered an order granting, in part, the plaintiff's request. Of relevance here, the court granted the plaintiff 45 days to retain private counsel and respond to the dispositive motions which had been filed by the defendants. (Doc. No. 39).

On May 14, 2003, the plaintiff again requested a stay of the proceedings in this action, indicating that family members had contacted "several" attorneys with respect to his case and were awaiting responses as to whether they would accept his case. (Doc. No. 41). No attorney ever entered an appearance on behalf of the plaintiff. After waiting another week, on May 20, 2003, the court entered an order denying the plaintiff's motion for an additional stay of the proceedings. (Doc. No. 46). Shortly thereafter, on May 23, 2003, the plaintiff renewed his motion for appointment of counsel. (Doc. No. 48). By order dated June 5, 2003, the court denied the motion for the reasons previously set forth by the court. (Doc. No. 49).

On June 25, 2003, the plaintiff filed an appeal to the district judge of the undersigned's June 5, 2003, order denying his renewed motion for appointment of counsel. (Doc. No. 50). In reviewing the record, it does not appear that the district court vacated or overruled this order.

On September 8, 2003, the undersigned issued a report addressing the dispositive motions which were then pending before the court. (Doc. No. 52). While that report was pending before the district judge, the plaintiff filed

another motion for appointment of counsel. The plaintiff raised several arguments in support of his motion. Initially, the plaintiff argued that appointment of counsel in his case was warranted because of the complexity of the legal issues and the requirement of expert testimony on the medical claims. The plaintiff further argued that counsel was warranted because of his demand for a jury trial.  The plaintiff also argued that extensive discovery would be necessary and that certain aspects of the case would turn on credibility determinations.  The plaintiff argued that his educational level (i.e., a high school education) was also a factor warranting the appointment of counsel. Finally, the plaintiff argued that his indeterminate confinement in administrative detention hindered his ability to pursue the instant action. (Doc. Nos. 61-63).

By order dated November 3, 2003, the district judge ruled upon the report issued by the undersigned on the dispositive motions and referred the matter back to the undersigned for disposition of the remaining pre-trial motions, including the motion for appointment of counsel.  (Doc. No. 66). Upon remand, on November 13, 2003, the undersigned issued an order denying the plaintiff's motion for appointment of counsel for the reasons set forth in its previous orders.  (Doc. No. 72).

On April 1, 2004, an order was issued setting a final dispositive motions deadline.  (Doc. No. 128).  Upon the filing of dispositive motions, on July 28, 2005, the undersigned issued a report which recommended that summary

10

judgment be entered in favor of all defendants on all claims. (Doc. No. 164). After having been granted an extension of time to do so, (Doc. No. 166), on September 15, 2005, the plaintiff filed objections to the report, (Doc. No. 167).

By order dated September 21, 2005, the district judge adopted the report of the undersigned with respect to the plaintiff's First Amendment claim for retaliation and his Eighth Amendment claim for deliberate indifference to his medical care. The court remanded, however, the undersigned's recommendation with respect to the plaintiff's state law medical malpractice claim. The concern of the court was the denial of counsel to the plaintiff when his medical malpractice claim required the presentation of expert testimony.

While this factor is a significant matter to consider, it alone does not require the appointment of counsel. See Simpson v. Federal Bureau of Prisons, 2005 WL 2387631 *4 (M.D.Pa. September 28, 2005)(Vanaskie, C.J.)("Although this case may turn on credibility determinations or the presentation of expert testimony, satisfying this prong of the Tabron factors alone is insufficient reason to appoint counsel in this matter.")[2]. For, if this factor alone were a determining factor in appointing counsel, the court would be required to seek appointment of counsel in virtually all Eighth Amendment

---

[2] Simpson involved a claim brought under the Federal Tort Claims Act, 28 U.S.C. § 2671, et seq., for inadequate medical treatment provided by the Federal Bureau of Prisons' medical staff. In conjunction with that action, the court considered the plaintiff's motion for appointment of counsel under § 1915(d).

11

inadequate medical care claims, many Federal Tort Claim Act cases and in all state law medical malpractice claims presented to the court by prisoners and other indigent litigants. This would clearly place an overwhelming burden on our courts purely voluntary, and relatively small *pro bono* list.

In addition, the <u>Montgomery</u> and <u>Parham</u> cases are clearly distinguishable from the matter at hand. In those cases, it was found that the district courts had abused their discretion in denying counsel because <u>most</u>, (i.e., all but one), of the <u>Tabron</u> factors were met by the indigent litigant. Here, the only annunciated concern with respect to the <u>Tabron</u> factors is the denial of counsel based upon the need for expert testimony. As previously discussed, the plaintiff's filings so far indicate that he has the ability to present the facts and legal issues of his case to the court without the assistance of counsel. He has a high school education and is capable of reading and writing without assistance. He is capable of communicating his thoughts to the court and is capable of responding to documents filed by opposing counsel. The plaintiff's filings have thus far been understood by the court and indicate that he is capable of presenting his claims. The basis of the plaintiff's remaining claim, (i.e., medical malpractice) is not so complex that, with the leeway given to *pro se* litigants by the court, he cannot adequately present his claim. The plaintiff's filings indicate an ability to pursue discovery and make adequate investigation necessary to address his medical malpractice claim. The district court was apparently satisfied with these reasons for previously

denying counsel and, in fact, granted summary judgment on the plaintiff's constitutional claims under the First and Eighth Amendments despite the denial of counsel.

The need for expert testimony, alone, is not a determinative factor in deciding whether to appoint counsel to an indigent litigant under § 1915(d), See Parham, 126 F.3d at 458; Tabron, 6 F.3d at 157; Simpson v. Federal Bureau of Prisons, 2005 WL 2387631 *4 (M.D.Pa. September 28, 2005)(Vanaskie, C.J.); Boardley v. First Correctional Medical, 2004 WL 540492 (D.Del.)("While medical expert testimony may be required, and although the case may turn on credibility determinations, these factors are not enough to weigh in favor of appointing counsel."), and because the cases cited by the district court in its September 21, 2005, order are distinguishable from the case at hand, summary judgment on the plaintiff's medical malpractice claims is appropriate in this case.

It is with great difficulty that the court is constrained to rule on these appointment of counsel issues. There is no public defender in civil cases. While the court of appeals may have decided that appointment of counsel was appropriate in the few cases cited above, the district courts have hundreds, if not thousands of cases brought by pro se prisoners, every year. In virtually all of those cases, appointment of counsel is requested. This court's experience is that very, very few that are referred to the districts *pro bono* panel are accepted. In fact although the undersigned has referred cases for

potential appointment, never has one been accepted.

It is indisputable that all of the members of the middle districts *pro bono* panel are highly qualified, competent and dedicated lawyers willing to earnestly review these cases when requested. The funds available to reimburse counsel for the retention of experts, unfortunately, are extremely limited. This has the practical effect of requiring counsel not only to determine the likely merits of the claim, but also the probability of a recovery sufficient to pay unreimbursed expenses. It is the court's experience that medical negligence cases, an area in which this court practiced for a number of years before appointment to the bench, involves substantial expense. In fact, marginal but potentially viable cases are often turned down because the costs will far exceed the likely recovery. While it is clear that *pro se* litigants should have the same opportunities to present their case, it is not clear that they should be entitled to advantages non indigent litigants do not have.

A review of the records in this case, including, but not limited to, the medical records attached as an exhibit to Doc. 153. do not indicate a probability of success on the merits nor do they indicate that *pro bono* counsel would likely be willing to take the risk of unreimbursed expenses for the potential recovery. Realistically, a court must use restraint in referring cases for review to the *pro bono* panel, or suffer the consequences of diminished credibility for those cases that truly merit *pro bono* intervention. Not surprisingly, the plaintiff's own efforts to retain counsel, over the long history

of this case, have been unsuccessful. The court does not believe that the failure to appoint counsel, nor even the failure to refer this case for *pro bono* evaluation, under these facts, warrant a denial of the defendant's motion for Summary Judgment on the State Law medical malpractice count.

On the basis of the foregoing, **IT IS RECOMMENDED THAT** summary judgment be entered in favor of the defendants on the plaintiff's state law claim for medical malpractice.

S/ **Malachy E. Mannion**  
**MALACHY E. MANNION**  
**United States Magistrate Judge**

**Date:** January 23, 2006

O:\shared\REPORTS\2002 Reports\02-1815.02.wpd